**NICHOLAS PHILIP OAKES**
501 North 24th Street
Phoenix, AZ 85008
(602) 244-1331 [Cottonwood unit]
nick.oakes@fox-ranch.com

Plaintiff in *Pro. Per.*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nicholas Philip Oakes,<br>*Plaintiff*,<br>v.<br>Gannett Media Corp.,<br>*Defendant*. | Case no. CV25-01286-PHX-SRB--JZB<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>CIVIL<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

Plaintiff Nicholas Philip Oakes ("Plaintiff") brings this action against Gannett Media Corp. ("Defendant") for defamation, public disclosure of private facts, false light invasion of privacy, intrusion upon seclusion, and intentional infliction of emotional distress arising out of Defendant's online publication of defamatory content regarding Plaintiff and disclosure of Plaintiff's and private mental health information on Defendant's website, azcentral.com.

After Plaintiff demanded that Defendant take down the defamatory matter and private mental health information, Defendant intentionally refused to remove the content. This refusal was made despite being provided clear evidence that the article contains injurious falsehoods and wrongfully discloses private information, and that the continued publication of such matters has caused, and continues to causing substantial harm to Plaintiff's reputation, employability, and well-being, and is presently impeding Plaintiff's successful reintegration into society after a long inpatient psychiatric commitment.

**JURISDICTION & VENUE**

1. This Court has jurisdiction under 28 U.S.C. § 1332 because Plaintiff is a citizen of Arizona, Defendant Gannett Media Corp. a Delaware corporation with its principal place of business in Virginia, and the amount in controversy exceeds $75,000.

2. Venue is proper under 28 U.S.C. § 1391(b) because Plaintiff is an Arizona resident, Defendant's publication targets a primarily Arizonan audience, and the publication causes ongoing harm within Arizona.

**PARTIES**

3. Plaintiff Nicholas Philip Oakes is an individual residing in Phoenix, Arizona.

4. Defendant Gannett Media Corp. is a corporation created and existing in and under the laws of Delaware, and headquartered in Virginia.

**FACTUAL ALLEGATIONS**

5. Defendant owns, operates, and/or controls the website azcentral.com (the "Website").

6. On July 25, 2014, Defendant, or its predecessor in interest, published an article on the Website titled "Rules for suspect's mental competency under fire" (the "Article").

7. Defendant continues to host, manage, and modify the Article, creating new publications of the Article content as recently as this year.

8. The Article makes numerous false and/or misleading statements about Plaintiff.

9. Plaintiff has demanded removal of the article, but Defendant has refused.

10. The Article falsely states that Plaintiff "blamed his neighbor for ruining the community, said he was a menace and that he had the authority to fix it" and that Plaintiff became a "vigilante."

11. The article falsely states Plaintiff "convinced a private investigator to help him buy a pistol."

12. The Article falsely states that Plaintiff was unemployed and incapable of work.

13. The Article falsely states Plaintiff "didn't fit in easily and his father bullied him."

14. Plaintiff always had a loving relationship with his father, and was captain of the track team, on the swim team, and in the school chorus, in high school and at NYU.

15. The Article falsely implies that Plaintiff's mother made accurate statements about Plaintiff's then-pending court case and mental health status, despite the easily ascertainable fact that Plaintiff's mother has no firsthand knowledge of Plaintiff's then-pending court case and mental health status, and had been living over 2,500 miles away for the last 20 years.

16. The Article falsely states that Plaintiff's "mental state began to slide" after being "bedridden and in a cast for a year … [and that he] grew despondent."

17. The Article falsely claims that Plaintiff "moved back to Texas [and] never showed up for family dinner and didn't call."

18. The Article falsely states that Plaintiff "ran out of money and gas [and] Police picked him up walking in circles." Plaintiff had about $10,000 in cash at the time and was never caught "walking in circles."

19. The Article falsely states Plaintiff "stuck his tongue out like a dog" and "[b]egan calling himself a counselor."

20. The Article falsely states that Plaintiff "was gaining weight," when in actuality, he won medals in swim, bike, and run competitions and marathons.

21. The Article falsely states that Plaintiff's "[w]ork life got erratic. He was fired from his bank job because he couldn't balance the books at his station." In reality, Plaintiff was never fired from a job, but rather twice left a banking job for a promotion with a competitor.

22. The Article falsely states that Plaintiff "started telling people he was a police officer and didn't have to live by other people's rules. He started seeing his neighbor as a menace to the community. He lost the new job. His downward spiral went unchecked for years."

23. In fact, Plaintiff reached out for help to local police (over 50 phone calls), his HOA (copies of emails to his HOA are still in possession of Plaintiff), and his family to report drug trafficking occurring in front of Plaintiff's house, vandalism to his three properties, repeated assaults on his person, death threats, and harassment against him.

24. The Article falsely states that Plaintiff's "[n]eighbors had a string of restraining orders against Oakes." The converse it true, Plaintiff had a restraining order against his neighbors, which was renewed for a second year, and which Plaintiff's neighbors repeatedly violated for over 2 years.
25. The Article also prominently displays Plaintiff's mugshot.
26. The 9th Circuit held that the release of Plaintiffs' mugshot by MCSO was unconstitutional, and Defendants refused to remove it after Plaintiff's notified them that the photograph was privileged and had been unlawfully acquired.
27. The publication of Plaintiff's privileged mugshot furthers stigmatization of Plaintiff.
28. Continued publication of the Article serves no ongoing public interest.
29. The Article is the first result or one of the first results returned when a Google search is conducted on Plaintiff's name.
30. Defendant has made changes to the Article's HTML structure, metadata, and/or search engine optimization data in the last year.
31. David Burstein, a fellow patient at the state hospital on Plaintiff's treatment unit, downloaded the Article and spread rumors throughout the hospital based on the Article's false claims, in order to incite violence and hatred against Plaintiff amongst his peers.
32. Many of Plaintiff's friends from high school, college, work, and the Army will not speak to him anymore as a result of reading the Article after searching for Plaintiff.
33. Alan Susser, Plaintiff's co-captain from his high school track team, told Plaintiff that Mary DelVechio, Plaintiff's friend and high school girlfriend wanted nothing to do with Plaintiff after reading the Article.
34. Luke Ratray, Plaintiff's close friend and classmate from first grade though NYU, told Plaintiff's brother "I always knew he would be in trouble" after reading the Article, and has since refused to communicate with Plaintiff.
35. Over 25 other intimate friends of Plaintiff now refuse to respond to his phone and mail correspondence since reading the Article.

36. Plaintiff's inpatient treatment teams have repeatedly delayed Plaintiff's progress to a less restrictive treatment environment after reading the Article, and claimed they did so on the grounds that the Article makes Plaintiff a "high profile" patient.
37. Plaintiff was declared legally insane as of September 6, 2013 by the Maricopa County Superiors Court.
38. Plaintiff's insanity ceased on May 2, 2024.

## CAUSES OF ACTION
## COUNT 1 – DEFAMATION

39. Plaintiff repleads and incorporates by reference all of the preceding paragraphs of this Complaint as if the same were fully set forth again herein.
40. Defendant made false statements concerning Plaintiff.
41. Defendant's false statements include, but are not limited to, saying Plaintiff was a "dangerous man," a "vigilante," that he "was fired from his bank job because he couldn't balance the books at his station," and that he "no longer spoke in sentences, only sputtering verbal goulash."
42. Defendant is aware of or failed to exercise reasonable diligence in ascertaining the falsehood of all of the foregoing false statements.
43. The false statements were first published in 2014 and were republished multiple times on Defendant's website, including in 2025, and viewed thousands of times.
44. Plaintiff was damaged by Defendant's statements in an amount to be proven at trial.
45. After Plaintiff requested removal the Article in November 2024, Defendant asserted that the Article was "accurate at the time it was published" and that Defendant does "not remove items from our newspaper or website after they have been published."
46. Defendant willfully refused to remove the defamatory content, with the intent to cause harm to Plaintiff, with the object of pecuniary gains, and with an evil mind so as to justify an award of punitive damages against Defendant in an amount sufficient to punish Defendant and to deter Defendant and others from engaging in similar conduct in the future.

**COUNT 2 – PUBLIC DISCLOSURE OF PRIVATE FACTS**

47. Plaintiff repleads and incorporates by reference all of the preceding paragraphs of this Complaint as if the same were fully set forth again herein.

48. On Defendant's public website, Defendant gave publicity to matters concerning the private life and ongoing mental health struggles of Plaintiff.

49. Publication of such matters is highly offensive to a reasonable person.

50. The intimate details of Plaintiff's mental health and family history are not of legitimate concern to the public.

51. Plaintiff has been damaged by Defendant's disclosure of his private mental health history in an amount to be proven at trial.

**COUNT 3 – FALSE LIGHT INVASION OF PRIVACY**

52. Plaintiff repleads and incorporates by reference all of the preceding paragraphs of this Complaint as if the same were fully set forth again herein.

53. Defendant gave publicity to the aforementioned matters concerning Plaintiff before the public in a false light.

54. The false light in which Plaintiff was placed would be highly offensive to a reasonable person.

55. Defendant recklessly or negligently failed to identify the falsity of the publicized matters and the false light in which Plaintiffs would be placed.

56. Plaintiff has been damaged by the aforementioned in an amount to be proven at trial.

**COUNT 4 – INTRUSION UPON SECLUSION**

57. Plaintiff repleads and incorporates by reference all of the preceding paragraphs of this Complaint as if the same were fully set forth again herein.

58. Defendant intentionally intruded upon the solitude or seclusion of Plaintiff's private affairs or concerns, including Plaintiff's private mental health history.

59. Defendant's intrusion was on private matters of Plaintiff.

60. Defendant's intrusion caused Plaintiff emotional anguish or suffering in an amount to be proven at trial.

## COUNT 5 – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

61. Plaintiff incorporates by reference all previous paragraphs.
62. Defendant's willful refusal to remove false and harmful content from their website constitutes outrageous conduct.
63. Defendant's public exhibition and sensationalization of Plaintiff's private mental health struggles also constitutes outrageous conduct.
64. Defendant's publication of the aforementioned content has caused Plaintiff severe emotional distress, embarrassment, and loss of enjoyment of life.
65. Defendant's publication has directly impeded Plaintiff's discharge from the Arizona State Hospital and has substantially impaired Plaintiff's liberty interests.
66. Defendant knew or a reasonable person would have known that continued publication of such content would cause severe emotional distress.
67. As result of Defendant's actions and omissions, Plaintiff has suffered severe mental anguish and reputational harm in an amount to be proven at a trial.

## COUNT 6 – INJUNCTION AGAINST HARASSMENT

68. Plaintiff repleads and incorporates by reference all of the preceding paragraphs of this Complaint as if the same were fully set forth again herein.
69. The actions of Defendant constitute harassment under Arizona Law.
70. Defendant published false and misleading statements that placed Plaintiff in a highly offensive and misleading light.
71. There is sufficient evidence of harassment of Plaintiffs by Defendant to warrant the issuance of an injunction against harassment pursuant to A.R.S. § 12-1809(T)(1)(a).
72. Arizona law defines harassment as "[a] series of acts over any period of time that is directed at a specific person and that would cause a reasonable person to be seriously alarmed, annoyed or harassed and the conduct in fact seriously alarms, annoys or harasses the person and serves no legitimate purpose." Id.
73. There is good cause to believe that great or irreparable harm would result to Plaintiff if the injunction is not granted.

## DEMAND FOR RELIEF

**WHEREFORE**, Plaintiff respectfully demands judgment in his favor and against Defendant as follows:

A. For a preliminary and permanent injunction requiring Defendant to remove the offending article;

B. For economic and consequential damages to be proven at trial;

C. For exemplary and punitive damages in the amount of $25,000,000.00 or in such amount as will be sufficient to punish Defendant for engaging in the conduct described herein and to deter Defendant and others from engaging in similar conduct in the future;

D. For an award of Plaintiff's reasonable costs and attorneys' fees pursuant to Fed. R. Civ. P. 54(d), and/or other applicable statutes and rules;

E. For pre-judgment and post-judgment interest on the foregoing amounts at the maximum rate allowed by law; and,

F. Any further relief the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

**DATED** this 13th day of April, 2025.

*[signature]*

**Nicholas Philip Oakes**
501 North 24th Street
Phoenix, AZ 85008
(602) 244-1331
[Cottonwood unit]
nick.oakes@fox-ranch.com
Plaintiff in *Pro. Per.*

**Jury Trial Demanded**